UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JILL JOHNSON and KEITH JOHNSON,<br><br>    Plaintiffs,<br><br>  v.<br><br>ETHICON, INC., ETHICON, LLC, and JOHNSON & JOHNSON,<br><br>    Defendants. | Case No. 20-cv-102-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for partial summary judgment filed by defendants Ethicon, Inc. and Johnson & Johnson (Docs. 18 & 19). Plaintiffs Jill Johnson ("Ms. Johnson") and Keith Johnson have responded to the motion (Docs. 21 & 22).

The plaintiffs brought this products liability case after Ms. Johnson underwent surgery in June 2011 for implantation of three of the defendants' medical devices. The case was consolidated for pretrial purposes in multi-district litigation ("MDL") proceedings—*In re: Ethicon Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2327—and has been remanded to this Court for trial. The defendants' motion for partial summary judgment, filed in the MDL proceeding, remains pending.

**I.   Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that

party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

      The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

      In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-

minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II. Facts

Viewed in the light most favorable to the plaintiffs, the evidence establishes the following relevant facts.

### A. Implantation of the Devices

On June 27, 2011, Ms. Johnson, 54 years old at the time, underwent a surgical procedure in which three Gynamesh transvaginal polypropylene mesh medical devices were implanted: a TVT-Secur, a Prolift +M,[1] and a Prosima (collectively, "the devices"). The devices were manufactured by Ethicon, a subsidiary of Johnson & Johnson. The surgery took place at St. Anthony's Memorial Hospital in Effingham, Illinois, and was performed by Michael D. Schultheis, M.D. Prior to her surgery, Ms. Johnson had been diagnosed with stress urinary incontinence and anterior and posterior pelvic organ prolapse, and the surgery was aimed at addressing those issues. It was not expected to resolve the urge incontinence Ms. Johnson was experiencing pre-surgery since the surgery was not designed to correct that problem.

Dr. Schultheis implanted the devices correctly and in accordance with the defendants' instructions and the applicable standard of care. Nevertheless, about a year after the June 27, 2011, surgery, Ms. Johnson started having problems connected with the devices. She suffered dyspareunia, erosion, migration of mesh particles into her bladder and uterus, urinary incontinence, uterus blockage, and bleeding. On November 21, 2013, she had to undergo

---

[1] The plaintiffs' complaint indicates the device was a Prolift rather than a Prolift +M, but subsequent filings refer to the device actually implanted as a Prolift +M. The Prolift +M is essentially the same device but with a lighter, softer, more pliable mesh to more closely mimic natural anatomy.

additional surgery to remove the eroded mesh and mesh debris from her bladder and uterus.  The procedure was performed by Sameer A. Siddiqui, M.D. at SLH St. Louis University Hospital in St. Louis, Missouri.  Throughout the whole physical ordeal, Ms. Johnson also suffered emotional and psychological distress.

   B. <u>Dr. Schulthies's Knowledge About the Devices</u>

Dr. Schultheis learned how to place transvaginal mesh implants during his residency from 2000 to 2004.  He also attended several Ethicon training events for the specific devices involved in this case and at some point served as an instructor for Ethicon teaching other doctors how to implant the Prolift, the Prolift +M, the Prosima, and the TVT-Secur.

When he was initially trained on the devices by Ethicon, Dr. Schultheis reviewed the Instructions for Use ("IFU")—essentially, a device reference manual for physicians—for the devices.  The IFUs explained potential risks, complications, and contraindications.  Dr. Schultheis did not read the copy of the IFU that came packaged in each device's box or any other time after his initial training.  He did not rely on the IFUs to inform him of the risks of using the devices because he already knew of the risks from many other sources.  Dr. Schultheis testified that different warnings in the IFUs would not have led him to change his decision to prescribe the devices for Ms. Johnson, which he says he continues to believe was an appropriate decision.

Dr. Schultheis was informed about the risks of using the devices during his residency, during Ethicon's physician training events, and by Ethicon's brochures he gave to patients considering those devices.  As a consequence of Ethicon's warning of the risks, additional information from Ethicon representatives, medical journals, and his own experience, Dr. Schultheis was aware of certain risks at the time of Ms. Johnson's surgery.  Dr. Schultheis believes Ethicon adequately informed him of the risks associated with the devices before Ms.

Johnson's surgery, and he relied on that disclosure's being complete when prescribing the devices to her.

Nevertheless, there were certain risks and facts about the devices of which Dr. Schultheis was not aware at the time of Ms. Johnson's surgery. For example, Dr. Schultheis was not aware whether patients experienced clinically significant adverse events due to chronic foreign body reactions or whether mesh tended to migrate in the body. Ethicon did not tell Dr. Schultheis that the manufacturer of the resins used in a polypropylene mesh had warned not to use the chemical material in medical applications involving permanent implantation into the human body. It further did not disclose to Dr. Schultheis information about the propensity for polypropylene mesh to degrade or to migrate, or the results of animal studies on degradation. It did not tell Dr. Schultheis that the devices had not been clinically tested. If Ethicon had shared additional information such as this, Dr. Schultheis testified that he would have considered that information in deciding whether to prescribe the devices, although he also states in his deposition that the additional information would not have changed his mind about prescribing the devices for Ms. Johnson.

  C. Procedural History

Johnson filed this lawsuit in the United States District Court for the Southern District of West Virginia in November 2013 as part of MDL No. 2327, *In re: Ethicon Inc., Pelvic Repair System Products Liability Litigation*. She and her husband assert 18 claims under various legal theories. The case emerged from the MDL proceeding and was remanded to this Court for trial. Pending at the time of remand was the defendants' motion for partial summary judgment.

The defendants seek summary judgment on the plaintiffs' claims for negligence (Count I), strict liability – manufacturing defect (Count II); strict liability – failure to warn (Count III);

strict liability – defective product (Count IV); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); breach of express warranty (Count XI); breach of implied warranty (Count XII); gross negligence (Count XIV); and unjust enrichment (Count XV).  The plaintiffs make no arguments in opposition to the request to the extent it concerns Counts II, IV, VI, VII, VIII, IX, XI, XII, XIV, and XV and merely respond that they will not be pursuing these counts at trial.  Accordingly, the Court will grant the defendants' motion as to those counts and turns now to the remaining requests for summary judgment.  Only two counts remain at issue in this motion: (1) negligence based on the defendants' failure to warn and manufacturing defect (Count I) and (2) strict products liability for failure to warn (Count III).

**III.    Analysis**

    A.    Negligent Manufacturing

With respect to Count I to the extent is relies on a negligent manufacturing theory, the defendants argue that the plaintiffs have no evidence to show the implanted devices deviated from the designed product as required for a manufacturing claim.  *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. App. Ct. 2010) ("A manufacturing defect occurs when one unit in a product line is defective. . . .").  The plaintiffs did not respond to this argument and have expressly stated that they will not be pursuing Count II, a strict liability claim based on a manufacturing defect.  Accordingly, the Court finds it appropriate to construe the plaintiffs' failure to respond to the negligence argument as an admission of the merits of the argument.  *See* Local Rule 7.1(c).  Accordingly, it will grant summary judgment for the defendants on Count I to the extent it is based on a negligent manufacturing theory.  This leaves

the sole question of whether the plaintiffs can prove their failure to warn negligence and strict liability claims.

> B. <u>Failure to Warn</u>

The plaintiffs' failure to warn claims center on the fact that they believe the defendants understated the risks and exaggerated the benefits of the devices. Specifically, they assert that Ethicon did not adequately warn Dr. Schultheis about the danger that the polypropylene mesh would, among other things, cause patients to have immune responses, would degrade, and would result in complications, internal injury, and pain. They also assert that Ethicon misled Dr. Schultheis into thinking the devices were safer than they actually were, especially compared to alternative treatments. They claim these failures were negligent (Count I) and rendered the devices defective (Count III).

The defendants ask the Court for summary judgment on the grounds that, in light of Dr. Schultheis's deposition testimony, the plaintiffs cannot prove any failure to warn caused Ms. Johnson's injuries. Specifically, they argue there is no evidence Dr. Schultheis read or relied on the warnings provided in the IFU, so a different warning could not have affected his decision to prescribe the devices. In essence, the absence of a better warning in the IFUs did not cause Dr. Schultheis to prescribe the three devices for Ms. Johnson because he would not have read or heeded those warnings.

The plaintiffs note that Dr. Schultheis *had* read the IFU warnings, but he did not read them every time he implanted one of the devices, and that information from those warnings played a role in the risk-benefit analysis he used whenever he prescribed a device for a patient. He believed in June 2011 that the defendants had shared with him all of the risks associated with the devices, but now he believes that the defendants had not made him aware of all the risks at

that time—including the risk of degradation of the polypropylene mesh in vivo; small pore, heavy-weight mesh; exposure of the mesh; blood loss; treatment failure; infections; nerve damage; and pain.  Had they made him aware of these risks, he would have weighed them in his cost-benefit analysis.  The plaintiffs maintain that whether a fully-informed cost-benefit analysis would have led Dr. Schultheis to prescribe a different treatment is a question of fact for a jury to decide.

All parties agree that Illinois substantive law applies to this case.  Illinois law employs the "learned intermediary" doctrine under which "the manufacturer of a prescription medical device has a duty to warn prescribing physicians or other health professionals who may prescribe the device of the product's known dangerous propensities."  *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002) (citing *Kirk v. Michael Reese Hosp. & Med. Ctr.,* 513 N.E.2d 387, 392 (Ill. 1987)).  "A corollary of [the learned intermediary doctrine] is the principle that a prescription medical device manufacturer need not provide a warning of risks already known to the medical community."  *Hansen*, 764 N.E.2d at 42.  The failure to warn can create liability in negligence or in strict products liability.  *See Kirk*, 513, N.E.2d at 391; *Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017).

The learned intermediary doctrine, however, does not dispense with the legal requirement to prove causation.  A plaintiff still must show that if there had been a proper warning, the learned intermediary would have declined to prescribe or recommend the product.  *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 752 (7th Cir. 2018) (discussing learned intermediary doctrine under Wisconsin law); *N. Trust Co. v. Upjohn Co.,* 572 N.E.2d 1030, 1037 (Ill. App. Ct. 1991).  Stated another way, the plaintiff must be able to prove "that the presence of adequate warnings would have prevented the plaintiff's injuries."  *Broussard v. Houdaille Indus.,*

8

*Inc.*, 539 N.E.2d 360, 363 (Ill. App. Ct. 1989); *compare Kane v. R.D. Werner Co.*, 657 N.E.2d 37, 39 (Ill. App. Ct. 1995) ("However, since plaintiff failed to read the warning labels, the alleged inadequate content of those warnings could not have proximately caused his injuries. . . ."). Ordinarily, the question of causation is for a jury to decide, *Tongate v. Wyeth Labs.*, 580 N.E.2d 1220, 1231 (Ill. App. Ct. 1991), and if there is an issue of fact regarding whether a learned intermediary would have acted differently with different warnings, summary judgment should not be granted, *see Huskey v. Ethicon, Inc.*, No. 2:12-cv-05201, 2015 WL 4944339, at *9 (S.D.W. Va. Aug. 19, 2015), *aff'd,* 848 F.3d 151 (4th Cir. 2017); *Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1070 (S.D. Ill. 2007), *aff'd*, 556 F.3d 596 (7th Cir. 2009).

  The defendants' sole argument for summary judgment on plaintiffs' failure to warn claims is that they cannot prove causation. They contend the plaintiffs cannot establish that any failure to warn caused their injuries because Dr. Schultheis would not have changed his decision to prescribe the devices even if he had been accurately and completely warned of the devices' risks and benefits. They note that he did not read the IFUs immediately before Ms. Johnson's surgery and that he said would have prescribed the devices even had there been different warnings because he was already aware of the risks.

  The plaintiffs argue that Dr. Schultheis had read Ethicon's IFUs even if he did not do so immediately prior to Ms. Johnson's surgery and that he would have weighed any new or different information about risks or benefits in deciding whether to prescribe the devices. To argue that there is a genuine issue of material fact regarding causation, they point to his testimony that he would have factored any new information into his cost-benefit analysis.

  There is a genuine issue of material fact whether Dr. Schultheis would have prescribe the devices if the warnings had been different. The evidence shows that the IFUs, which Dr.

9

Schultheis read at least at the beginning of his training, and other information provided by Ethicon was part of the basis for his knowledge of the risks that he factored into his prescription decision. Thus, even if a long time ago, the IFUs and Ethicon's other warnings played a substantial, even if not exclusive, role in his understanding of the risks and benefits of the products. And while he testified that he would still prescribe the devices for Ms. Johnson today, he also testified that he was unaware of certain information regarding the devices' risks and would have factored any new information into his prescription decision. This seemingly inconsistent testimony about whether his decision would have changed had he had more information is enough to put the question to the jury. Accordingly, the defendants are not entitled to judgment as a matter of law on the plaintiffs' failure to warn claims in Counts I and III.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the defendants' motion for partial summary judgment (Doc. 18).

The motion is **GRANTED** to the extent it seeks summary judgment on:

- Count I to the extent it relies on a negligent manufacturing theory; and
- Counts II, IV, VI, VII, VIII, IX, XI, XII, XIV, and XV.

The motion is **DENIED** to the extent it seeks summary judgment on:

- Count I to the extent it relies on a negligent failure to warn theory; and
- Count III.

The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. The remaining claims in this case are Count I except to the extent it relies on a negligent manufacturing theory and Counts III, V, X, XIII, XVI, XVII, and XVIII in their entirety. Should the parties believe the Court is in error about its assessment of the remaining claims or believe

any other claim can be disposed of by agreement prior to trial, they are encouraged to notify the

Court a soon as possible.

**IT IS SO ORDERED.**
**DATED:  June 30, 2020**

                                                   s/ J. Phil Gilbert
                                                   **J. PHIL GILBERT**
                                                   **DISTRICT JUDGE**